UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON DILLOW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | NO.: _____ |
| KYLE SCHAUER, EVAN FREILER, | : | |
| DAVID DONKOCHIK, JONATHAN | : | |
| MCHUGH, and BOROUGH OF | : | |
| MOUNT CARMEL, | : | |
| | : | (JUDGE _____) |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Jason Dillow, by and through his attorneys, Barry H. Dyller, Theron J. Solomon, Caelie M. Sweigart and Dyller & Solomon, LLC, brings this action related to the deprivation of Mr. Dillow's protected rights and in support thereof, alleges as follows:

## JURISDICTION AND VENUE

1. This action arises out of violations of the United States Constitution brought pursuant to 42 U.S.C. §§ 1983 and 1985, and the common law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

4. Plaintiff Jason Dillow is an adult individual domiciled in Northumberland County, Pennsylvania.

5. Defendant Kyle Schauer ("Defendant Schauer") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

6. Defendant Evan Freiler ("Defendant Freiler") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

7. Defendant David Donkochik ("Defendant Donkochik") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

8. Defendant Jonathan McHugh ("Defendant McHugh") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

9. Defendant Borough of Mount Carmel ("Defendant Borough") is a municipality located in Northumberland County, Pennsylvania.

## FACTUAL BACKGROUND

<u>The Overarching Conspiracy</u>

10. Upon information and belief, for the period of at least on or about June 15, 2018, to December 3, 2021 and beyond, in Northumberland County, within the Middle District of Pennsylvania, Defendants Schauer, Freiler, Donkochik, and McHugh, while acting under color of law, willfully combined, conspired and agreed with each other and others to injure, threaten, and intimidate detainees in and around Mt. Carmel, in the free exercise and enjoyment of a right and privilege, secured under the Constitution and laws of the United States, namely the right to be free from unreasonable searches and seizures, which includes the right to be free from the use of unreasonable force by a law enforcement officer.

11. Upon information and belief, it was part of the conspiracy that: (a) when making certain arrests and while having arrestees in their custody, Defendants Schauer, Freiler, Donkochik, and McHugh used excessive force on the arrestees, including but not limited to, punching, kicking, choking, tasing, beating, and body-slamming; (b) Defendants Schauer, Freiler, Donkochik, and McHugh took steps to ensure that video of the arrests was not captured by police cameras, or if footage that incriminated them was captured, failed to take steps to ensure that footage was preserved; (c) Defendants Schauer, Freiler, Donkochik, and McHugh falsely reported that

3

arrestees acted in a manner requiring violence and then falsely charged arrestees with criminal offenses, including but not limited to aggravated assault, resisting arrest, and related offenses to conceal their own use of violence; and, (d) Defendants Schauer, Freiler, Donkochik, and McHugh threatened arrestees with more violence.

The March 6, 2022 Events in Furtherance of the Conspiracy

12. On March 6, 2022, Mr. Dillow was involved in a dispute with his father at his parents' home.

13. Upon returning to his own home, Mr. Dillow heard a knock at his front door while he was in the bathroom.

14. When Mr. Dillow eventually reached the front door, he opened it to find Defendant Schauer sitting in front of the house in his police cruiser.

15. After seeing Mr. Dillow at the door, Defendant Schauer ran toward the house and grabbed Mr. Dillow by the throat.

16. Defendant Schauer then threw Mr. Dillow to the ground and handcuffed him.

17. Defendant Schauer transported Mr. Dillow to the Mount Carmel Police Department where he was placed in the holding room.

18. While in the holding room, Mr. Dillow called out because he had to use the bathroom.

19. Defendant Schauer and Defendant Freiler, the K-9 officer for Defendant Borough, responded by yelling and cursing at Mr. Dillow to shut his mouth.

20. Defendants Schauer and Freiler then threatened Mr. Dillow with the K-9 dog as they allowed it to start entering the holding room.

21. During this period of time, Defendant Freiler was in control of the K-9 dog.

22. After initially starting to leave, Defendant Schauer re-entered the holding room, with Defendant Freiler still present, and kicked Mr. Dillow's legs out from under him while he was still handcuffed, causing him to fall to the floor.

23. Defendant Schauer then pushed his knee into Mr. Dillow's stomach and threatened that if he did not shut up, Defendant Schauer would let the K-9 dog loose to attack him.

24. Defendant Freiler failed to intervene to prevent or limit Defendant Schauer from using unreasonable force against Mr. Dillow, despite having the opportunity to do so.

25. During Defendant Schauer's threats, Defendant Freiler never suggested in any way that he would not let his K-9 dog loose on Mr. Dillow.

26. Defendant Schauer later took Mr. Dillow from the holding room to his police cruiser, allegedly for transport to the Northumberland County Jail

("NCJ").

27. As Mr. Dillow attempted to enter the cruiser while still handcuffed, Defendant Schauer pushed Mr. Dillow forward, slamming his face and head off the top of the door opening.

28. Instead of going to NCJ, Defendant Schauer took Mr. Dillow to a secluded area off Industrial Park Road in Northumberland County.

29. Defendant Schauer then parked the car and opened the back seat passenger-side door where Mr. Dillow was sitting.

30. Defendant Schauer cursed at Mr. Dillow and punched him in the head while Mr. Dillow was still handcuffed and seat-belted in the vehicle.

31. After removing Mr. Dillow's seatbelt, but while he was still handcuffed, Defendant Schauer banged Mr. Dillow's head hard off the door multiple times.

32. Because Mr. Dillow was clearly injured, Defendant Schauer called NCJ to falsely report that Mr. Dillow was combative and asked that teams meet them in the garage upon arrival.

33. Defendant Schauer then closed the back seat door without first securing Mr. Dillow's seatbelt.

34. After driving the vehicle a short distance, Defendant Schauer slammed on the brakes, throwing Mr. Dillow forward and smashing his face against the glass dividing the front and back seats of the police cruiser.

35. Defendant Schauer proceeded onto Northumberland County Drive in Coal Township, PA where the vehicle encountered several speed bumps in the roadway.

36. As the vehicle approached each speed bump, Defendant Schauer slammed on the brakes, then sped up, then slammed on the brakes again.

37. Every time Defendant Schauer did this, Mr. Dillow was thrown around, unbuckled in the back seat, slamming his head and face against the dividing glass.

38. When the vehicle finally reached the NCJ garage, four corrections officers removed Mr. Dillow from the back seat.

39. Mr. Dillow asked the corrections officers to please keep Defendant Schauer away from him.

40. The corrections officers assured Mr. Dillow that they would keep him separated from Schauer, and he would be fine.

41. Mr. Dillow immediately visited the nurse at NCJ who recommended that he be taken to the hospital; however, he was never transported as there were not enough corrections officers to do so and the NCJ nurse and corrections officers did not want to return Mr. Dillow to Defendant Schauer's custody.

42. As a result of Defendant Schauer's actions, Mr. Dillow suffered a

head injury, facial bruising, split lip, bloody nose, and a chipped tooth.

43. On June 15, 2023, Defendant Schauer, Defendant Donkochik, and Defendant McHugh were indicted in federal court for the conspiracy described above, as well as for actions similar to those taken against Mr. Dillow on March 6, 2022 (the "Indictment").

44. At least ten (10) specific instances of such violence against arrestees involving Defendant Schauer are outlined in the Indictment.

45. These specific instances of violence occurred in 2018, 2020, and 2021, while Defendant Schauer was employed by Defendant Borough as a police officer.

46. Overall, the Indictment identifies twenty-two (22) instances of the use of unreasonable force and/or false reports by Defendant Schauer, Defendant Donkochik, and Defendant McHugh.

47. Upon information and belief, Defendant Freiler has engaged in acts similar to those outlined in the Indictment and in concert with the indicted officers.

48. Defendant Borough's policymakers, including, but not limited to, the Mayor, Council, and/or Chief of Police, knew or should have known about the practice within the Mount Carmel Borough Police Department of permitting the use of unreasonable and excessive force against detainees and arrestees, as such practice was permanent and well-settled.

## COUNT ONE
### Unreasonable and Excessive Force
### Mr. Dillow v. Defendant Schauer
### (42 U.S.C. § 1983)

49. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

50. Defendant Schauer's use of force set forth above constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

51. Defendant Schauer's actions were objectively unreasonable in light of the facts and circumstances confronting him.

52. Defendant Schauer knew that Mr. Dillow did not pose a threat to him, Defendant Freiler, or any other member of the public.

53. Defendant Schauer's conduct was a deprivation, under color of state law, of rights guaranteed to Mr. Dillow under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

54. As a result of Defendant Schauer's violations of Mr. Dillow's constitutional rights, Mr. Dillow suffered substantial injuries and damages.

## COUNT TWO
### Unreasonable and Excessive Force
### Mr. Dillow v. Defendant Freiler
### (42 U.S.C. § 1983)

55. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

56. Defendant Freiler's use of force, threats of use of force, and failure to intervene while Defendant Schauer used unreasonable force, as set forth above, constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

57. Defendant Freiler's actions were objectively unreasonable in light of the facts and circumstances confronting him.

58. Defendant Freiler knew that Mr. Dillow did not pose a threat to him, Defendant Schauer, or any other member of the public.

59. Defendant Freiler's conduct was a deprivation, under color of state law, of rights guaranteed to Mr. Dillow under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

60. As a result of Defendant Freiler's violations of Mr. Dillow's constitutional rights, Mr. Dillow suffered substantial injuries and damages.

COUNT THREE
Conspiracy - Unreasonable and Excessive Force
Mr. Dillow v. Defendant Schauer, Defendant Freiler, Defendant Donkochik,
and Defendant McHugh
(42 U.S.C. §§ 1983 and 1985)

61. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

62. While acting in their positions as police officers for Defendant Borough, Defendant Schauer, Defendant Freiler, Defendant Donkochik, and Defendant McHugh engaged in a conspiracy to deprive individuals of their

constitutional rights by using excessive force on detainees in the form of punching, kicking, choking, tasing, beating, and body-slamming.

63. Defendant Schauer's use of unreasonable force, and Defendant Freiler's use of unreasonable force, threats of use of unreasonable force, and failure to intervene, as set forth above, deprived Mr. Dillow of his civil rights in furtherance of the conspiracy.

64. As members of the conspiracy, Defendant Donkochik and Defendant McHugh are also responsible for their co-conspirators' actions in furtherance of the conspiracy.

65. As a result of the conspiracy and violations of Mr. Dillow's constitutional rights in furtherance of the conspiracy, as set forth above, Mr. Dillow suffered substantial injuries and damages.

COUNT FOUR
*Monell* – Custom of Permitting Use of Unreasonable Force
Mr. Dillow v. Defendant Borough
(42 U.S.C. § 1983)

66. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

67. Defendant Borough had policies, customs and/or practices that resulted in the violation of Mr. Dillow's rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

68. Specifically, Defendant Borough had a custom of permitting its

police officers to use unreasonable and excessive force against detainees and arrestees.

69. This custom was widespread and constituted the standard operating procedure of Defendant Borough.

70. Defendant Borough's policymakers acquiesced in the Mount Carmel Borough police officers' use of unreasonable and excessive force, while failing to supervise and/or reprimand such officers.

71. Defendant Borough's acquiescence to the Mount Carmel Borough Police Department's custom of allowing the use of unreasonable and excessive force against detainees and arrestees, and its failure to supervise its police officers amount to deliberate indifference to the rights of persons whom its police officers encounter.

72. Defendant Borough's policies, customs and/or practices directly caused and were a moving force behind the constitutional deprivations described above.

73. As a result of Defendant Borough's custom of permitting the use of unreasonable and excessive force against detainees and arrestees, and its failure to supervise its police officers, Mr. Dillow suffered serious injuries and damages.

74. Defendant Borough therefore violated Mr. Dillow's rights under the Fourth Amendment and Fourteenth Amendment to the United States

Constitution.

## COUNT FIVE
Mr. Dillow v. Defendant Schauer
(Battery)

75. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

76. Defendant Schauer committed the acts described above with the intent to cause a harmful or offensive contact with Mr. Dillow's body and/or with the intent to put Mr. Dillow in reasonable and immediate apprehension of a harmful or offensive contact with his body.

77. The actions of Defendant Schauer directly resulted in harmful and/or offensive contact with Mr. Dillow's body.

78. As a result of the actions of Defendant Schauer, Mr. Dillow suffered substantial injuries and damages.

## COUNT SIX
Mr. Dillow v. Defendants Schauer and Freiler
(Assault)

79. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

80. Defendants Schauer and Freiler intended to put Mr. Dillow in reasonable and immediate apprehension of a harmful or offensive contact with his body.

81. As a result of the actions of Defendants Schauer and Freiler, Mr. Dillow was put in reasonable and immediate apprehension of such contact.

82. As a result of the actions of Defendants Schauer and Freiler, Mr. Dillow suffered substantial injuries and damages.

WHEREFORE, Mr. Dillow demands judgment as follows:

A. As to Counts One, Two, Three, Five, and Six, an amount to be determined at trial, including punitive damages, plus interest;

B. As to Count Four, an amount to be determined at trial plus interest;

C. For Plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

D. For the costs and disbursements incurred in this action; and

E. For such other and further relief as the Court deems just and proper.

DYLLER & SOLOMON, LLC

/s/ Barry H. Dyller
/s/ Theron J. Solomon
/s/ Caelie M. Sweigart
Attorneys for Plaintiff
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury.